THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DONALD REYNOLDS, Defendant-Appellant.

Third District   No. 81-308

Opinion filed March 19, 1982.

Robert Agostinelli and Peter A. Carusona, both of State Appellate Defender's Office, of Ottawa, for appellant.

John A. Barra, State's Attorney, of Peoria (John X. Breslin and Rita Kennedy Mertel, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE STOUDER delivered the opinion of the court:

Defendant Donald Reynolds was indicted for armed robbery. Following a jury trial in the circuit court of Peoria County, he was convicted and sentenced to 20 years imprisonment.

Shortly before 9 p.m. on March 11, 1979, closing time at the Long John Silver's restaurant which was robbed, a man and several companions entered the establishment. Assistant manager Michael Enerson waited on the man and then returned to his closing duties. At 9:15 p.m. the man came into the office and ordered Enerson, at gunpoint, to lie on the floor. The intruder asked about the alarm system and whether anyone would be coming to the office. He then had Enerson put money in a bag and, after obtaining a key from another employee, opened the safe. The man then ordered Enerson back on the floor and pulled phone wires out of the wall in the office and kitchen. Enerson and the other employees, who had been similarly ordered to lie on the floor during the crime, were then ordered into the walk-in cooler. At trial, Enerson testified that he had never before seen defendant, who himself claimed that he had eaten at the restaurant 40 or 50 times. Two other employees positively identified defendant as the armed robber at a lineup and at trial.

In addition to the identification testimony regarding the instant offense, two other witnesses identified defendant as the perpetrator of similar crimes under the motive, intent, identity, absence of mistake, or *modus operandi* exception to the general rule prohibiting such testimony. (*People v. Romero* (1977), 66 Ill. 2d 325, 362 N.E.2d 288.) James Turner testified that at approximately 10 p.m. on May 20, 1979, defendant entered a Long John Silver's restaurant in Melville, Missouri. Turner was in the back room counting the day's receipts when defendant approached him with a gun and told him to lie on the floor. Defendant then had him put the money into a bag and, pursuant to an employee's suggestion, ordered them into the cooler. After ripping out the telephone wires, he departed. John Torris testified that at approximately 11 p.m. on November 21, 1979, defendant, who had been the last customer of the day, approached him with a dark-colored gun. Torris had been about to explain that the Burger King restaurant in Pekin was closed when defendant ordered all employees to lie down in the rear of the establishment. Torris was then ordered to put money in a bag and to open the safe. Defendant ordered the employees into the cooler, ripped off the telephone wires, and departed. Appropriate limiting instructions were offered after each of these victims testified.

Defendant countered the State's identification by claiming that, unlike the perpetrators of these armed robberies, he did not wear a beard until late April or early May of 1979. Photographs, identified as being taken in late January and early April of that year, showed him to be clean-shaven, as he was at trial. Cheryl Ann Johnson and Joseph Balli, both of whom testified that they saw defendant frequently during the relevant period, corroborated defendant's testimony. In rebuttal, Laurie Schmidt testified that on February 2, 1979, defendant was in the Ben Franklin store in Seymour, Wisconsin, where she worked, and was wearing a full beard. On cross-examination, she stated that defendant had handed her a note saying he had a gun and wanted money, which she gave him. She also told the police she would never forget the robber's face. In surrebuttal, defendant denied ever having been in the store.

Defendant also presented an alibi defense. He testified that at the time of the offense he was having a telephone conversation with his fiance, Rhonda Barnacal. Barnacal corroborated his testimony, stating that they talked continually from 8 p.m. to 11 p.m. on the evening in question. Additional facts will be presented in our discussion of the issues.

■■ The first of the six issues presented for our review is whether defendant was denied the effective assistance of counsel. Before turning to this issue, we must address defendant's contention that a Federal standard should be employed to determine the competency of counsel, and the burden should be on the State to establish the lack of prejudice to

defendant. As the Supreme Court of Illinois had declined to adopt a new standard (see *People v. Greer* (1980), 79 Ill. 2d 103, 120-21, 402 N.E.2d 203, 211-12; *People v. Murphy* (1978), 72 Ill. 2d 421, 438, 381 N.E.2d 677, 686), so shall we. Therefore the inadequacy of a defendant's trial counsel entitled him to a new trial if counsel was actually incompetent, as reflected in the performance of his duties as trial attorney, and if this incompetence produced substantial prejudice to the defendant without which the result of the trial would probably have been different. (*People v. Watson* (1981), 98 Ill. App. 3d 296, 424 N.E.2d 329; *People v. Talley* (1981), 97 Ill. App. 3d 439, 422 N.E.2d 1084; *People v. Scott* (1981), 94 Ill. App. 3d 159, 418 N.E.2d 805.) This a defendant "must clearly establish." *People v. Georgev* (1967), 38 Ill. 2d 165, 168, 230 N.E.2d 851, 854, *cert. denied* (1968), 390 U.S. 998, 20 L. Ed. 2d 97, 88 S. Ct. 1202.

■■ ■ Defendant contends that he was prejudiced by six acts and omissions. The first was that counsel allegedly disclosed privileged communications and disclosed trial strategies. The disclosure argument is based on the fact that during discovery, defense counsel furnished the State with memoranda of his interviews with witnesses, including defendant. Supreme Court Rule 413(d)(i) (Ill. Rev. Stat. 1979, ch. 110A, par. 413(d)(i)) requires the production of "memoranda reporting or summarizing [such] oral statements." As for the memoranda reflecting defendant's statements, they reflected his testimony at trial. We find neither incompetence nor prejudice in this practice, although certainly our holding would differ if a confidential admission or confession were involved. The trial strategies which were disclosed were that defendant would claim he had no beard at the time of the offense, and would present an alibi defense. Supreme Court Rule 413(d) (Ill. Rev. Stat. 1979, ch. 110A, par. 413(d)) requires the former disclosure; Supreme Court Rule 413(d)(iii) (Ill. Rev. Stat. 1979, ch. 110A, par. 413(d)(iii)), the latter. Again we find neither incompetence nor prejudice. *People v. Knippenberg* (1977), 66 Ill. 2d 276, 362 N.E.2d 681, cited by defendant, is inapposite. *Knippenberg* involved a situation where the State obtained a summary of what the defendant had told a defense investigator, which was used to impeach the defendant's trial testimony. No such impeachment was here attempted.

■■ The second alleged instance of incompetence was the failure to interview certain eyewitnesses; however, defendant does not allege that they were aware of any fact which would be exonerating or otherwise helpful to his defense. The same is true regarding the failure to interview one nonoccurrence witness. We fail to see how defendant was thereby prejudiced.

■■ The third contention is that counsel failed to interview witnesses in the presence of a third party or, in the alternative, withdraw from the

case. Defendant premises this contention on the basis that certain prior inconsistent statements could not be used for impeachment. While we agree it is the better practice, defendant cites no decision holding the failure to interview witnesses in the presence of a third party to be incompetence. Similarly no decision is cited holding the failure to withdraw and attempt to testify constitutes incompetence. If counsel had elected to follow one of defendant's recommendations on appeal, it merely would have allegedly established that two witnesses were more certain of their identification at trial than during a lineup, and that Enerson thought the witnesses were lying. Counsel questioned all three about these matters. One witness admitted he was more certain of his identification at trial. The other denied ever being uncertain, and Enerson specifically denied the statement attributed to him. Defendant further does not explain the basis of the purported admissibility of a third person's recollection of Enerson's opinion of the veracity of other witnesses. Given these circumstances, we find neither incompetence nor prejudice.

■■ Defendant's fourth contention regarding his trial counsel's competence is that testimony regarding his involvement in another crime was elicited. This occurred when counsel cross-examined Schmidt concerning the circumstances under which she observed defendant. Given the very strong identification testimony concerning defendant's wearing a full beard at a time he claimed to be clean-shaven, counsel was forced to attack the reliability of the identification. This he did by showing Schmidt's observation was made in an emotionally volatile situation, and that the Wisconsin robber utilized an entirely different *modus operandi*. Even if we might not have employed this tactic, errors in strategy and of judgment on the part of counsel do not render a representation incompetent. *People v. Torres* (1973), 54 Ill. 2d 384, 297 N.E.2d 142.

■■ The fifth contention was that counsel suggested in closing argument that defendant had to prove his innocence. During the course of a long hypothetical in which counsel asked the jurors to put themselves in the position of a person falsely accused of a crime, he rhetorically asked, "How are you going to prove your innocence?" In isolation, this might well constitute prejudicial incompetence; however, counsel repeatedly told the jury, during the conclusion of his closing argument, that the State had the burden of proving defendant guilty beyond a reasonable doubt. The jury was then properly instructed by the court. We do not find, under these circumstances, that the question prejudiced defendant to any significant extent.

■■ The final contention regarding incompetence of counsel is that there was a failure to raise in a timely fashion and properly preserve several issues. Without detailing the many arguments in support of this conten-

tion, we find it without merit. Considering defendant's six contentions and the totality of counsel's conduct at trial (*People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677), we do not find trial counsel was incompetent to the extent that defendant was so prejudiced that the outcome of the trial was affected. We therefore conclude he received the effective assistance of counsel.

The second issue presented for our review is whether defendant is entitled to a new trial because the State's knowledge of his alleged confidences and the defense evidence and strategy undermined the integrity of the adversarial system and denied defendant his right to the assistance of counsel. For the reasons stated in our discussion of the first of the previous six contentions, we do not find that defendant is entitled to a new trial because of the discovery disclosures.

The third issue is whether defendant was denied a fair trial and due process of law when the trial court denied his motions *in limine* to exclude evidence of other crimes and subsequently permitted the State to introduce such evidence under the *modus operandi* exception to the general rule barring its use. Defendant contends that the evidence of other offenses does not meet the requirement of being substantially similar and having common features with the offense charged. *People v. Romero* (1975), 31 Ill. App. 3d 704, 334 N.E.2d 305, *aff'd* (1977), 66 Ill. 2d 325, 362 N.E.2d 288.

■■ All three offenses were armed robberies of fast-food franchise restaurants, and two of these restaurants were Long John Silver's. The descriptions given by the victims of the other crimes, including the presence of a beard, matched the description of defendant in this case. Each offense occurred at closing time and was perpetrated with a gun, two of which were specifically described as dark colored. In each case, the employees were told to lie on the floor, and the manager or assistant manager was told to place cash in a bag. The employees were always ordered into a cooler, and the telephone wires were always ripped off. In both Long John Silver's robberies, the robber came directly into the office. In the other crime, the manager had initially approached the perpetrator to tell him the restaurant was closing, so no such opportunity presented itself. Under these circumstances, we find the trial court appropriately denied the motions *in limine* and admitted this evidence with a proper limiting instruction.

■■ The fourth issue is whether defendant was denied the right to a fair trial where the State, in closing argument, commented on the failure of the defense witnesses to notify the police of their exculpatory evidence. This comment was made in response to defendant's earlier mentioned hypothetical. Where comments of the State are provoked by defense counsel's statements in closing argument, a defendant cannot claim that

such statements were prejudicial. (*People v. Miller* (1981), 94 Ill. App. 3d 725, 419 N.E.2d 78; *People v. Braxton* (1980), 81 Ill. App. 3d 808, 401 N.E.2d 1062, *appeal denied* (1980), 81 Ill. 2d 584; *People v. Matthews* (1979), 69 Ill. App. 3d 65, 387 N.E.2d 10.) Furthermore, a prosecutor may argue the inconsistency between the testimony and the conduct of an alibi witness who had the opportunity to make a statement to a police agency on behalf of a defendant, but did not. (*People v. Kester* (1979), 78 Ill. App. 3d 902, 397 N.E.2d 888, *appeal denied* (1980), 79 Ill. 2d 633.) We therefore find no denial of a fair trial by the State's comment.

■■ The fifth issue presented for our review is whether defendant's sentence should be vacated and this cause remanded because the trial court, in imposing sentence, considered three prior convictions which were reversed and remanded. An accused is entitled to a reconsideration of his sentence where the court, in imposing the sentence, considered a prior conviction which was later reversed. (*People v. Henderson* (1981), 95 Ill. App. 3d 291, 419 N.E.2d 1262; *People v. Beyah* (1979), 72 Ill. App. 3d 690, 391 N.E.2d 96; *People v. Buckley* (1977), 44 Ill. App. 3d 1038, 358 N.E.2d 1327.) We therefore vacate the sentence and remand this cause to the trial court for a new sentencing hearing, with the court ordered to impose the new sentence, if any, retroactive to the prior imposition of sentence. *Cf. People ex rel. Willis v. Brantley* (1972), 6 Ill. App. 3d 645, 285 N.E.2d 571 (State dismissed cause for lack of evidence).

■■ The final issue presented for our review is whether the trial court abused its discretion in considering, as a statutory factor in aggravation, that defendant's conduct threatened serious harm. Defendant contends this was improper as the factor is implicit in the offense of armed robbery. This contention has previously been rejected in *People v. Robinson* (1980), 89 Ill. App. 3d 211, 411 N.E.2d 589, which we cite with approval.

Accordingly, the judgment of the circuit court of Peoria County is affirmed as to defendant's conviction, vacated as to his sentence, and remanded for resentencing consistent with our views herein.

Affirmed in part, vacated and remanded in part.

SCOTT, P. J., and BARRY, J., concur.