THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JOHN A. KRANKEL, Defendant-Appellant.

Fourth District   No. 4—82—0296

Opinion filed April 11, 1983

MILLS, J., dissenting.

Daniel D. Yuhas and Gary R. Peterson, both of State Appellate Defender's Office, of Springfield, for appellant.

Ronald C. Dozier, State's Attorney, of Bloomington (Robert J. Biderman and David E. Mannchen, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE TRAPP delivered the opinion of the court:

On January 26, 1981, an information was filed charging defendant with the crime of burglary which alleged that on July 30, 1980, he knowingly and without authority entered a building in Hudson, Illinois, occupied by Isaac L. and Virginia T. Brown with the intent to commit therein a theft.

On March 1, 1982, jury trial began. The State's chief witnesses at trial were the victims, defendant's ex-wife Kelly Carr, and Morton police officer Robert Huston. Defendant did not testify at trial and no evidence was offered in his behalf. Prior to trial, defendant's counsel made an oral motion *in limine* to exclude testimony of his former wife concerning the circumstances of the alleged burglary, but the motion was denied and no issue has been raised on appeal as to the admissibility of defendant's ex-wife's testimony.

On appeal, defendant argues that (a) he was not proved guilty of burglary beyond a reasonable doubt; (b) he was denied the effective

assistance of counsel; (c) the trial court erred in failing to appoint counsel other than defendant's appointed counsel to argue his *pro se* motion alleging ineffective assistance of counsel; and (d) the trial court erred in imposing a 14-year extended-term sentence to run consecutively to defendant's other convictions. In view of our disposition of defendant's second issue, we need not address defendant's other arguments. A brief description of the facts is necessary.

Isaac Brown testified that on July 30, 1980, he, his wife, and their daughter were in their backyard during the early evening hours working in the garden or mowing. He testified that they had not locked the door and that he did not know the defendant or give him authority to enter the house. Brown stated that the next day he noticed that his wife's billfold containing several credit cards was missing but did not file a police report. Isaac first became concerned that his wife's billfold had been stolen the following month when he received a Visa credit card bill listing a purchase of a television set. It was not until January of 1981, that he filed a police report with the McLean County Sheriff's office, after he received a phone call from a Detective Huston of Morton, Illinois, who inquired whether his Visa card had been taken. Brown identified People's exhibit No. 1 which was a credit card receipt from a K-Mart store in Morton listing the purchase of a color TV on July 30, 1980, and denied ever being in the Morton K-Mart store, or authorizing his signature to appear on the draft. Virginia Brown's testimony was corroborative of Isaac's. Both related the same occurrence on July 30, and neither testified to seeing the defendant on the premises.

The State's key witness was Kelly Carr, formerly Kelly Krankel. Carr and defendant were married on April 13, 1979, and divorced on April 9, 1981, three months after defendant was charged. Carr testified that she and defendant were living in Morton, Illinois, in July of 1980 and that on the 30th of the month they traveled to McLean County. Carr stated that defendant, who was driving, exited off of Interstate 74 at Goodfield and proceeded to Hudson. She related that defendant saw "them" in the backyard and pulled in the driveway of "the house." She testified that she observed her husband walk through the garage and knock on a side door. After no response, she observed defendant enter the house and a minute later exit carrying a wallet in his bib overalls. They then left Hudson and proceeded to the K-Mart store in Morton where she and defendant accompanied by their two small children, purchased a television set with a Visa card that was in the billfold. She identified People's exhibit No. 1, and testified that she forged the signature of I.L. Brown.

After Carr retained an attorney to commence divorce proceedings against the defendant, she admitted the crime to Detective Huston in Morton, and was prosecuted for forgery in Tazewell County. On cross-examination, she acknowledged that when she was first contacted by the police she denied any knowledge of her husband's burglary. She denied that her husband had been stuck in the mud near a river in Pekin, Illinois, on the night of July 30, and further denied striking a deal with the authorities in Tazewell County for her testimony against the defendant. She did not indicate how the police became aware of her involvement in the incident but stated that the police had wanted to talk to her as early as October of 1980. Carr explained that she did not want to talk to the police until January because she was pregnant and her parents did not want her to become involved until she delivered the baby. Ms. Carr admitted she had difficulty in serving the defendant in the divorce action, but denied that she had contacted the police so that their location of defendant would make it easier for her to serve him with process.

The State's final witness was Detective Huston. Huston stated that he was contacted by Sergeant Poynter of Peoria who received information from Kevin Carr, defendant's ex-brother-in-law, regarding the television set. Huston stated he talked to Carr and the Browns in January of 1981, and requested the Browns to file a report with McLean County authorities. On cross-examination, he admitted that when he first talked to Carr she denied any knowledge of where the card came from but stated that later she admitted forging the signature on the credit card draft.

This was all the evidence presented by the State. No evidence was offered by the defense.

The jury found the defendant guilty and he received an extended-term sentence of 14 years to run consecutively to sentences defendant received in Peoria and Bureau counties. No evidence was offered in defendant's behalf at his sentencing hearing.

The only claim of error argued by defendant which we consider is his contention that he was denied the effective assistance of counsel. Prior to sentencing, defendant filed a *pro se* post-trial motion which alleged that he was denied the effective assistance of counsel because of his appointed attorney's failure to investigate an alibi witness on his behalf. At a hearing on this motion, defendant stated to the court that five months prior to trial he informed his attorney of an alibi witness and contacted the witness to inform him that his attorney would be in touch. The trial court inquired of defendant's appointed counsel on the validity of this claim:

"THE COURT: All right.

In ruling on the post-trial motion—or prior to ruling on it, is there anything you wish to say, Mr. O'Rourke with respect to the alleged alibi?

MR. O'ROURKE: I did not talk to the man, Judge. That is all I would say. I did not talk to the man, I was never able to contact him.

MR. KRANKEL: That witness was in business in Pekin, Illinois, Tazewell Towing Co. it wasn't just an individual.

THE COURT: Is there any indication, Mr. O'Rourke of the time you were notified as to the existence of this gentleman in Pekin?

MR. O'ROURKE: I assume what Mr. Krankel says is correct.

MR. KRANKEL: It was on our first meeting.

MR. O'ROURKE: I don't remember Judge, what the exact chronology of the events were.

MR. KRANKEL: And, Your Honor, I believe one of your conditions in your considering of that is if it is, in fact, new evidence or original evidence—it is original evidence, it is not new evidence—the attorney was informed. I even made a call from the County Jail to the witness."

The trial court denied the defendant's *pro se* motion for a new trial. We reverse.

Arguing in favor of the trial court's ruling, the State responds that counsel's decision of whether to call an alibi witness was a matter of trial strategy not amounting to ineffective assistance of counsel. The State also contends that defendant has presented insufficient proof of the identity of the alibi witness and his alleged testimony. We disagree.

The test for determining whether a defendant has been deprived of the effective assistance of counsel guaranteed under both the United States Constitution and the Illinois Constitution (U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, sec. 8), is whether the defendant's appointed counsel is actually incompetent as reflected in the performance of his duties as trial attorney, and if this incompetence produced substantial prejudice without which the outcome of the trial would probably have been different. *People v. Greer* (1980), 79 Ill. 2d 103, 402 N.E.2d 203; *People v. Royse* (1982), 107 Ill. App. 3d 326, 437 N.E.2d 679; *People v. Reynolds* (1982), 105 Ill. App. 3d 698, 434 N.E.2d 776; *People v. Robinson* (1979), 70 Ill. App. 3d 24, 387 N.E.2d 1114; *People v. Elder* (1979), 73 Ill. App. 3d 192, 391 N.E.2d 403.

In *Greer*, the supreme court indicated that "[t]he failure to interview witnesses may indicate actual incompetence [citation], particularly when the witnesses are known to trial counsel and their testimony may be exonerating [citation]." (79 Ill. 2d 103, 123, 402 N.E.2d 203, 212-13.) Despite counsel's failure to interview the witnesses in *Greer*, the supreme court found no reversible error because defendant had not pointed to any favorable testimony the witnesses would have produced, and did not demonstrate any prejudice without which the trial would have been different. In *Greer*, it was clear that the witness whom defendant wished his counsel would have interviewed would have been unable to give any favorable testimony toward establishing any viable defense.

In *People v. Howard* (1979), 74 Ill. App. 3d 138, 392 N.E.2d 775, the appellate court held that appointed counsel's failure to discover psychiatric records of a defendant who was on trial for aggravated battery, and whose only defense was insanity, amounted to ineffective assistance of counsel which resulted in substantial prejudice to the defendant. There, the records at issue came to light only after defendant was convicted at trial and revealed that she had previously been committed to a mental institution for committing a similar aggravated battery. The appellate court indicated that defense counsel's failure to introduce any evidence of insanity at trial and the failure to discover the records to offer at defendant's competency hearing substantially prejudiced the accused. As in *Howard*, here the undiscovered evidence was crucial to the only defense available and no other evidence was offered on behalf of the defendant. The *Howard* court noted that the records discovered after trial contradicted the expert's opinion relied upon by the trial court in determining defendant's competency to stand trial. Here, the prejudice to the defendant is similar. The only witness able to contradict Carr's testimony was the defendant's alibi witness, and Carr was the only witness whose testimony connected defendant with the burglary.

In *Howard*, defendant's counsel admitted his failure to investigate evidence crucial to the defendant's only possible defense. Here, counsel's admitted failure to investigate the witness, in light of the evidence against defendant, cannot be said to be insignificant and without prejudice to him. Although it is true that the substance of the alibi testimony may not exist or be true, this at least should have been a matter to be verified by trial counsel. According to the defendant, the witness was the operator of a tow-truck service in Pekin, Illinois, and had been contacted by him prior to trial. On cross-examination, Kelly Carr denied that her ex-husband was stuck in the mud

along a river near Pekin on the night of July 30, 1980. The tow-truck operator, if defendant's statements are believed, could have testified that defendant's vehicle was being freed from the mire on the date of the alleged burglary. We disagree with the State's argument that defendant failed to identify the witness, or the nature of the testimony. Compare *People v. Tate* (1981), 94 Ill. App. 3d 192, 418 N.E.2d 1048.

We do not agree that counsel's failure to investigate the witness was a matter of trial strategy. The cases relied upon by the State for the proposition that errors in judgment or trial strategy, such as the decision of whether to call or not to call a witness, do not amount to ineffective assistance of counsel are inapposite. (See *People v. Witherspoon* (1973), 55 Ill. 2d 18, 302 N.E.2d 3; *People v. Elder* (1979), 73 Ill. App. 3d 192, 391 N.E.2d 403.) The question of whether to call a witness may certainly be classified as strategy, but the failure to investigate the testimony of a named existing witness cannot be deemed to be strategy.

Nor do we agree with the State that the result is controlled by our decision in *People v. Seaman* (1977), 53 Ill. App. 3d 755, 368 N.E.2d 1124. In *Seaman,* this court held that counsel's failure to offer any evidence on defendant's claim of insanity did not amount to ineffective assistance of counsel. There, the decision not to call certain expert witnesses was prompted by the defendant, and the defense of insanity was highly speculative in the light of evidence indicating that defendant was an intelligent person with some college training. Here, the situation is altogether different. The only evidence of defendant's guilt came from Carr and it was for the jury to say whether her testimony was tainted with prejudice. The testimony of a disinterested businessman upon a matter of possible alibi may well have undermined the jury's assessment of the credibility of the essential witness Carr. In light of the limitations of the State's case, a conclusion is necessary that defendant was significantly prejudiced.

For the foregoing reasons, the judgment of the trial court is reversed, and the cause is remanded for a new trial.

Reversed and remanded.

LEWIS, J., concurs.

JUSTICE MILLS, dissenting:

This record—to my view—is too weak a reed to support a finding of incompetency of counsel.

I must dissent.

Krankel's *pro se* post-trial motion essentially adopts the issues raised by attorney O'Rourke and then adds:

"(5. The Public Defender, Michael O'Rourke erred in his representation of the defendant by refusing to file the affimative [sic] defense of an alibi.

(6. That the defendant was denied proper counsel pretaining [sic] to through [sic] investagation [sic] by the Public Defenders Office as to the whereabouts of the defendant at the time the alleged offense was supposedly comitted [sic]."

At the post-trial motion hearing, Krankel was given unrestrained opportunity to address the court and during his extensive comments his sole reference to the question of ineffective assistance of counsel was as follows:

"On the ineffective assistance of counsel, the Defendant feels had he received proper counsel he would have had a defense that would have kept the jury from bringing a verdict of guilty back for the reasons as follows:

The court appointed a Public Defender for the Defendant's being financially unable to acquire counsel, that Public Defender being Michael O'Rourke. Approximately five months prior to the Defendant's trial by jury, he informed hi[s] attorney of the affirmative defense and how to obtain his alibi. The Defendant even contacted the witness to tell him his attorney would be contacting him. Mr. O'Rourke failed not only to contact the alibi witness but to even claim the affirmative defense which the Defendant learned of after the State had rested their case at trial. It is believed by the Defendant the affirmative defense was a very crucial part of his defense, and so on the grounds of the Defendant's having ineffective assistance of counsel, he asked the court to grant his motion for a new trial."

With reference to this issue, the only other comments in the record are as set forth in the majority opinion.

The only attack here on attorney O'Rourke's competency is that he failed to investigate an alibi witness. Yet the four corners of the record before us simply do not bear this out. If anything, the only deficiency of counsel was that he didn't say *enough* on the record to explain what he did or was unable to do. All that defense counsel said was: "I did not talk to the man, I was never able to contact him." This does not imply to me a *failure* to investigate.

All we have in this record are the bald assertions of the defend-

ant. Mere allegations. No witness was produced in court at the post-trial hearing. No affidavit of the witness was proffered reciting what he would testify to. No adequate offer of proof at all. Surely the burden is upon the defendant to present specific identification of the witness, the witness himself, an affidavit of the witness or some other sufficient proof. We still don't even know the *name* of the witness! All we have asserted is "Tazewell Towing Co."

Even if O'Rourke did fail to investigate, such failure is insufficient to reverse a criminal conviction *unless* it is shown that the testimony the witness would have produced was favorable to the defendant and its absence was prejudicial to him. *Greer.*

In *People v. Davis* (1981), 98 Ill. App. 3d 461, 424 N.E.2d 630, the defendant argued on appeal that his attorney failed to call an alleged alibi witness and he was therefore denied effective assistance of counsel. "However," said the *Davis* court, "defendant does not disclose the identity of this witness, and there is nothing to indicate how this unknown witness could have established an alibi defense." (98 Ill. App. 3d 461, 466, 424 N.E.2d 630, 635.) And in *Greer*, Justice Underwood wrote:

> "In this case, however, the defendant does not point to any potentially favorable testimony which his trial counsel failed to investigate, nor does defendant contend that anyone would have contradicted the testimony of Linda Creemens, or that her testimony could have been excluded. Although defense counsel may have been surprised by Creemens' testimony, there has been no showing of a prejudicial effect without which the outcome of the trial would probably have been different." 79 Ill. 2d 103, 123, 402 N.E.2d 203, 213.

*Davis* and *Greer* on this issue are strikingly similar to the case at bench.

I cannot conclude from this puny record that defense counsel was incompetent.