THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
HURLEY MALLETTE, Defendant-Appellant.

Second District   No. 84—289

Opinion filed February 21, 1985.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (Phyllis J. Perko and Martin P. Moltz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE REINHARD delivered the opinion of the court:

Defendant, Hurley Mallette, was found guilty in a jury trial of three counts of burglary (Ill. Rev. Stat. 1983, ch. 38, par. 19—1(a)) all occurring during the early morning of January 24, 1983, at three separate businesses located in the same Lakeside Drive office complex in Bannockburn. Following a sentencing hearing, defendant was sentenced to concurrent six-year terms of imprisonment for each of the three burglary offenses.

Defendant raises two issues on appeal: (1) whether defendant's presence as a passenger in a vehicle containing proceeds from recent burglaries was sufficient proof beyond reasonable doubt that he committed the burglaries, and (2) whether error occurred during post-trial proceedings, requiring a remand for appointment of new counsel and a new hearing on defendant's assertion of ineffective assistance of counsel, where defendant proceeded *pro se* below to argue his post-trial contention of ineffective assistance of his trial counsel.

The evidence adduced at trial below showed that at approximately 3 a.m. on January 24, 1983, three separate businesses, all located in a Bannockburn office complex, were burglarized and various items of office equipment were later found missing.

Lake County Deputy Sheriff Jimmy Bryant testified that while on patrol, at approximately 3 a.m. on January 24, 1983, he received a radio dispatch alerting him that a burglar alarm had been activated at the American Roller Company in a Bannockburn office complex; that upon arriving at that location he initially found a typewriter lying in the snow outside the office complex and that the front door glass had been broken; that he found other windows belonging to several different businesses in the complex had also been broken; that he stayed at the office complex and radioed for an investigator; and that he did not see anyone enter or leave the complex during the time he was there.

Chicago police department officer Steve Viggiano testified that at 3:40 a.m. on January 24, 1983, while on routine patrol with his partner, Officer Donald McGrath, he noticed a 1975 Plymouth station wagon northbound on Lockwood approaching Lake Street in Chicago; that they curbed the vehicle because it did not have any brake lights; that he exited the squad car and approached the passenger side of the curbed vehicle to check for a city vehicle sticker and was handed a

temporary registration certificate by defendant, who was seated in the middle of the front seat next to another passenger; that he returned to the rear of the curbed vehicle where his partner was speaking to the driver; that as he was returning to the rear of the vehicle, defendant slid behind the steering wheel and fled the scene; that his partner, Officer McGrath, jumped back in the squad car and chased the fleeing vehicle, while Viggiano handcuffed the original driver; and that he and his partner noticed numerous typewriters, computer equipment and a photocopy machine in the rear of the curbed station wagon. On cross-examination, Viggiano stated that he observed the middle passenger in the front seat for approximately five seconds and had no doubt that it was defendant.

Chicago police department officer Donald McGrath corroborated Officer Viggiano's version of the occurrence and added that when they first observed the 1975 Plymouth station wagon he noticed an IBM typewriter in the back window in plain view; that he saw numerous typewriters and other types of office equipment in the back of the wagon; that while he was chasing the wagon, after it had fled from the scene, he called for assist units; that the fleeing vehicle stopped in a vacant lot and he pulled his squad car up behind it; that he exited his police vehicle and proceeded to the driver's side door of the wagon; that he observed the occupants of the wagon crouched down in the front seat; that both occupants exited the passenger-side door and fled on foot in different directions and he chased defendant; that defendant hopped a fence into a rear yard of a nearby residence; that two assist units then arrived and the area was cordoned off; that defendant was discovered crouched on his hands and knees in the mud beneath a rear stairway; that defendant was dressed in dark, muddy clothing, was perspiring and his heart was beating quite strongly; that defendant, the station wagon, and the office equipment contained therein, were taken to the 15th District police station in Chicago; that he and his partner called all the suburban Chicago municipalities in an attempt to ascertain whether a burglary had been committed; that he was informed by the Lake County sheriff's department that three burglaries had been recently committed and that the serial numbers of the office equipment reported missing matched the serial numbers of the recovered items; that three persons representing the three burglarized businesses came to the 15th District police station and identified all of the recovered items between the hours of 7:30 a.m. and 11:30 a.m. on January 24, 1983. On cross-examination, McGrath stated that he never lost sight of the station wagon while chasing it; that he never saw defendant's face while chasing him on

foot; that he lost sight of defendant for one or two minutes after defendant had jumped over the fence; and that when he found defendant he was wearing the same clothing as the man he was chasing.

No witnesses were presented on behalf of defendant. At the close of all the evidence, defendant did, however, move for a directed verdict, arguing that the State had not shown that defendant was in exclusive or joint possession of the stolen property and that his mere presence in the vehicle did not establish his participation in the earlier burglaries. Defendant's motion for directed verdict was denied by the court below.

The trial court then submitted the case to the jury, which was instructed, *inter alia*, that if they found that the defendant had exclusive possession of recently stolen property, and there was no reasonable explanation of his possession, they might infer that the defendant obtained possession of the property by burglary. (See Illinois Pattern Jury Instructions, Criminal, No. 13.21 (2d ed. 1981).) The jury found defendant guilty of all three burglary offenses as charged.

■ Defendant first contends that he was not proved guilty of burglary beyond a reasonable doubt because his conviction was based solely on a permissive inference of his guilt arising from the exclusive and unexplained possession of recently stolen property. In support of this contention, defendant maintains that his mere presence in an automobile which he neither owned nor was driving, and which contained the proceeds of a recent burglary, does not establish his exclusive possession of the stolen property and the presumption of guilt arising therefrom.

The question of whether the State sustained its burden of proof on the burglary charge turns on whether the jury should have been allowed to infer defendant's guilt from his presence in an automobile containing recently stolen property.

In *People v. Housby* (1981), 84 Ill. 2d 415, 420 N.E.2d 151, our supreme court reevaluated its prior decisions permitting an inference of guilt of burglary from the exclusive and unexplained possession of recently stolen property in view of the United States Supreme Court decision in *County Court v. Allen* (1979), 442 U.S. 140, 60 L. Ed. 2d 777, 99 S. Ct. 2213, and concluded that such an inference of guilt is only proper if: (1) there is a rational connection between the possession and the participation in the burglary; (2) the guilt of burglary more likely than not flows from the possession of the burglary proceeds; and (3) there is corroborating evidence of guilt. (See *People v. Housby* (1981), 84 Ill. 2d 415, 424, 420 N.E.2d 151; *People v. Felters* (1982), 105 Ill. App. 3d 1066, 1067, 433 N.E.2d 368; *People v. John-*

*son* (1981), 96 Ill. App. 3d 1123, 1125-26, 422 N.E.2d 19.) The same evidence will apparently satisfy all three prongs of the *Housby* test. *People v. Klein* (1983), 115 Ill. App. 3d 582, 585, 450 N.E.2d 1268.

Our examination of the record reveals that the *Housby* three-prong test was satisfied in the instant case, and thus, the permissive inference of defendant's guilt by the jury was proper.

Under the first prong of the above analysis, we find that the evidence adduced at trial sufficiently established that there was a rational connection between defendant's recent possession of the stolen office equipment and his participation in the charged burglaries. Lake County Deputy Sheriff Bryant testified that he responded to a burglary alarm at 3 a.m. on January 24, 1983, which had been activated at a business located in a Bannockburn office complex. When he arrived at the scene he noticed that there had been forced entries into several business offices at that location through smashed window and door panels. Bryant stated he did not see anyone enter or exit the building. However, 40 minutes after the burglaries had been perpetrated, a station wagon visibly loaded with office equipment, in which defendant was a passenger, was stopped in Chicago for a traffic violation at 3:40 a.m. It was further established that the office equipment recovered from the rear of the station wagon matched the items reported missing from the Bannockburn businesses. The evidence also showed that defendant, while seated in the front of the vehicle, handed one of the officers a temporary registration certificate for the car indicating that he was not just a casual passenger. Under these facts we find that a rational connection between defendant's recent possession of the proceeds and his participation in the burglaries did, in fact, exist. See *People v. Felters* (1982), 105 Ill. App. 3d 1066, 1067, 433 N.E.2d 368; *People v. Moore* (1981), 98 Ill. App. 3d 507, 511, 424 N.E.2d 751; compare *People v. Ross* (1981), 103 Ill. App. 3d 883, 886, 431 N.E.2d 1288.

Under the second prong of the *Housby* analysis, requiring that the guilt of burglary more likely than not flows from the "possession" of the burglary proceeds, defendant maintains, relying on *People v. Evans* (1962), 24 Ill. 2d 11, 179 N.E.2d 657, that he was not in "exclusive possession" of the stolen property since he was merely a passenger in an automobile along with two other persons and was unaware that it contained the proceeds of a recent burglary.

We find the situation presented in the case at bar distinguishable from that in *Evans*, where the stolen property was in the trunk of the car and the defendant passenger had no key to open it. Here, the numerous items of stolen office equipment filled the entire portion of

the cargo area of a station wagon as verified by the testimony of the arresting officers. Indeed, our supreme court has held that a passenger in an automobile retained exclusive possession of stolen property under substantially similar circumstances. (*People v. Reynolds* (1963), 27 Ill. 2d 523, 526, 190 N.E.2d 301 (where stolen property filled the whole interior of automobile in which defendant was a passenger).) The Illinois appellate court has also recognized that joint possession with others can be exclusive possession for the purposes of satisfying the *Housby* presumption of guilt test. (*People v. Ross* (1981), 103 Ill. App. 3d 883, 887, 431 N.E.2d 1288; see also *People v. Ricketson* (1970), 129 Ill. App. 2d 365, 378, 264 N.E.2d 220.) Thus, we find defendant had exclusive possession of the burglary proceeds for the purpose of satisfying the second prong of *Housby*.

We conclude that defendant's joint, but "exclusive possession" of the stolen office equipment, in view of the short time span between the initial perpetration of the burglaries and the subsequent discovery of the burglary proceeds in defendant's possession 40 minutes later, more likely than not establishes his guilt under the second prong of *Housby*.

We also find ample evidence in the instant record firmly corroborating defendant's guilt under the third prong of *Housby*. At trial, both arresting officers testified that while they were questioning the initial driver of the station wagon at the rear of the vehicle, defendant slipped behind the wheel and fled from the scene. Officer McGrath testified that he jumped into his squad car and chased the fleeing vehicle, driven by defendant, around several corners into a vacant lot. As McGrath exited his squad car, he at first noticed defendant and another passenger crouched down in the front seat of their vehicle and then saw the two occupants jump out of the car and flee on foot in different directions. After chasing him over a fence and into the yard of a nearby residence, McGrath found defendant crouched beneath a stairway. Defendant's conduct of fleeing both in the vehicle, and subsequently on foot, as well as hiding beneath the stairway, tends to show his consciousness of guilt (*People v. Harris* (1972), 52 Ill. 2d 558, 561, 288 N.E.2d 385), supplying the necessary corroborative evidence under the third prong of *Housby*. See *People v. Moore* (1981), 98 Ill. App. 3d 507, 512, 424 N.E.2d 751.

■ The evidence illustrates that the requirements of *Housby* were fully complied with in the instant case. Therefore, we find that the permissive inference of defendant's guilt from his exclusive possession of recently stolen property was properly utilized by the court below. The burden of production then shifts to the defendant to neu-

tralize the State's case in the eyes of the jurors by providing a reasonable explanation of his possession of the proceeds. (*People v. Housby* (1981), 84 Ill. 2d 415, 430-31, 420 N.E.2d 151; see also *People v. Moore* (1981), 98 Ill. App. 3d 507, 513, 424 N.E.2d 751.) Defendant did not offer any reasonable explanation of his possession of the stolen property, and the jury was free to infer his guilt under these circumstances. Consequently, we conclude that on this record defendant was proved guilty of burglary beyond a reasonable doubt.

■ Defendant's second issue raised on appeal arises out of the post-trial proceedings on his motion for a new trial. A written motion for a new trial was filed by defendant's counsel, assistant public defender Gordon Dougherty. The motion contained nine typewritten points in support of the motion. A tenth point handwritten by defendant alleged that "[t]he defendat [*sic*] was denied effectiveness of [*sic*] assistance of counsel." At a hearing on the motion, Dougherty presented argument on the first nine points of the motion, and asked that the defendant be permitted to personally argue the tenth point, which the court allowed.

Defendant essentially stated that another assistant public defender had been assigned to his case, but on the day of the jury trial his present counsel was assigned and represented him at trial because his other counsel was ill. Defendant briefly argued that his trial counsel, Dougherty, "didn't have time to go over my case with me, interview any witnesses, or anything." Dougherty then reminded the trial court that there had been a motion regarding this allegation prior to the beginning of trial and he had then informed the court that he had read the case and felt familiar enough with it to go to trial. The trial court denied the motion for a new trial in its entirety. At no time during the post-trial proceedings did the defendant request new counsel to assist him in his ineffective-assistance-of-counsel contention.

The record reveals that just before defendant's jury trial began, Dougherty, on behalf of defendant, moved to continue the trial because defendant's counsel up to this date, assistant public defender Steven Martin, had called in sick. Dougherty informed the court that defendant told him that he would like Martin as his attorney, as he had worked with him throughout the last month and felt Dougherty could not defend him effectively. Dougherty also informed the court that he had consulted with the defendant three times, had read the entire case, had talked with Martin on the telephone twice that morning regarding the case, and felt capable of defending the defendant. Defendant himself informed the court that he did not think Dougherty could defend him effectively on such short notice. The court denied

the motion for continuance, stating the case did not appear to be complex and Dougherty indicated he was familiar enough with the case to proceed.

On appeal, defendant argues that it was not enough to allow defendant to be heard *pro se* on his post-trial contention of ineffective assistance of his trial counsel and, citing *People v. Krankel* (1984), 102 Ill. 2d 181, 464 N.E.2d 1045, and *People v. Fields* (1980), 88 Ill. App. 3d 821, 410 N.E.2d 1178, requests that we remand to the trial court for appointment of new counsel and for another hearing of his assertion of ineffective assistance of counsel.

In *Krankel*, defense counsel filed a motion for new trial and, later, defendant filed a *pro se* motion for a new trial which repeated the assertions of defense counsel's motion, and added the issue of ineffective assistance of counsel based on defense counsel's alleged refusal to set forth the defense of alibi and alleged failure to investigate the defendant's whereabouts at the time of the offense. Defense counsel argued for a continuance of the motions, stating, *inter alia*, that defendant was entitled to other counsel. The motion for a continuance was denied, defendant was given an opportunity to present argument on his *pro se* motion, which he did, and the trial court denied both motions for a new trial.

Although the appellate court reversed and remanded for a new trial, holding that the trial court had erred in denying defendant's *pro se* motion for a new trial based on the fact that his appointed counsel failed to investigate an alibi witness on his behalf (*People v. Krankel* (1983), 113 Ill. App. 3d 992, 447 N.E.2d 1379 (Mills, J., dissenting)), our supreme court vacated the judgment of the appellate court and remanded for a new hearing on defendant's assertion of ineffective assistance of counsel and for appointment of new counsel, stating:

"In their briefs, both the State and the defendant agree that the defendant should have had counsel, other than his originally appointed counsel, appointed to represent him at the post-trial hearing in regard to his allegation that he had received ineffective assistance of counsel. We agree with the parties and remand this matter for a new hearing on the defendant's motion for a new trial with appointed counsel other than his originally appointed counsel. If, after the hearing, the judge finds that the defendant did not in fact receive effective assistance of counsel based upon counsel's alleged failure to present a valid alibi defense, then he shall order a new trial. If, however, he determines that the defendant received the effective assistance of counsel, he shall deny a new trial and leave standing defend-

ant's conviction and sentence for burglary. If the circuit court denies defendant a new trial, defendant can still appeal to the appellate court based on his assertion of ineffective assistance of counsel or the other three issues which were raised in the appellate court and in this court but were not addressed." *People v. Krankel* (1984), 102 Ill. 2d 181, 189, 464 N.E.2d 1045.

We do not interpret the holding in *Krankel* to establish a *per se* rule that all *pro se* motions for new trial by defendants alleging ineffective assistance of trial counsel mandate appointment of new counsel to assist in the motion irrespective of the basis of the motion and in the absence of a request for new counsel. In the case at bar, the defendant did not request new counsel to assist him in presentation of the motion and argued the basis of the motion *pro se*. In *Krankel*, the State agreed on appeal that the defendant should have had counsel, and we think it reasonable to assume from the limited record of the trial proceedings included in the opinion that the defendant had requested in the trial court the appointment of new counsel to assist him in the motion. See also *People v. Simpson* (1984), 129 Ill. App. 3d 822.

Additionally, we believe that the basis for which the defendant here asserted ineffective assistance of counsel, namely, his trial counsel's inability to properly prepare a defense because of the short time he had been assigned to the case, is a contention that the defendant could present *pro se* and the trial court could determine based on its knowledge of defense counsel's performance at trial. In contrast, the allegation of ineffective assistance of counsel based upon counsel's failure to present a valid alibi defense in *Krankel* more clearly requires the assistance of counsel in the preparation and presentation of evidence to support this contention.

Accordingly, we do not believe *Krankel* establishes an inflexible rule requiring appointment of new counsel to assist him on all occasions where a defendant presents *pro se* a post-trial argument of ineffective assistance of counsel. Nor do we find *People v. Fields* (1980), 88 Ill. App. 3d 821, 410 N.E.2d 1178, also cited by defendant, as apposite. Here, as contrasted with *Fields*, defendant was allowed to present and argue *pro se* his motion asserting ineffective assistance of counsel and his counsel did not make any arguments to refute the contention, thereby placing him in conflict with the defendant. Under the circumstances of this case, we decline to remand for the purpose of appointment of new counsel and for a new hearing on defendant's motion for a new trial on the assertion of ineffective assistance of counsel.

■ Although defendant has not argued in his appellate brief the merits of his post-trial contention of ineffective assistance of counsel, thereby waiving the issue for review, we have nevertheless examined the entire record which conclusively shows that defense counsel conducted a vigorous defense and exhibited no lack of knowledge or effectiveness due to the short time he had to examine the case prior to trial. He reviewed the entire file, talked with the defendant's prior attorney on several occasions about the case, and consulted with the defendant. Moreover, defendant has neither in the trial court nor in this court stated specifically how he was prejudiced by his counsel's late entry into the case. (See *People v. Williams* (1974), 59 Ill. 2d 402, 320 N.E.2d 849.) The case was not complex. Judging counsel's performance under the standards set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, we cannot say defendant was denied his constitutional right to effective assistance of counsel. *People v. Barnard* (1984), 104 Ill. 2d 218, 470 N.E.2d 1005.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

HOPF and SCHNAKE, JJ., concur.