2021 IL App (2d) 190893-U
No. 2-19-0893
Order filed November 8, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 18-CF-3073 |
| CHARLES EDWARD ROACH JR., | ) ) | Honorable Debra D. Schafer, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE BRIDGES delivered the judgment of the court.
Justices Jorgensen and Brennan concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's conviction for residential burglary was reversed for insufficient evidence. First, though defendant was spotted driving the victim's car stolen from the street near the home, he was not found to possess the car keys taken from inside the home, and he could have come to possess the car other by stealing the keys. Second, though defendant's DNA was found on gloves recovered from the car, and entry was made through a window from which no fingerprints were recovered, there were at least three other contributors to the DNA found on the glove, and the detective who processed the crime scene testified that the intruder's use of gloves was only one possible reason why no fingerprints were found.

¶ 2    Following a jury trial, defendant, Charles Edward Roach Jr., was found guilty of residential burglary (720 ILCS 5/19-3(a) (West 2018)) and sentenced to seven years' imprisonment. He

appeals, contending that the State did not prove beyond a reasonable doubt that he entered the victims' residence. We agree and reverse.

¶ 3                                    I. BACKGROUND

¶ 4     The indictment alleged that defendant committed residential burglary in that, without authority, he knowingly entered the dwelling of Douglas Hicks with the intent to commit therein a theft or felony.

¶ 5     At trial, Hicks testified that he owned a home on Camp Avenue in Rockford. He kept a Buick Encore parked on the street. Because the house was not air-conditioned, the family kept the north and south side windows open and covered by screens in the summer.

¶ 6     On August 7, 2017, Hicks went to bed around 9 p.m. The windows were open, and the screens were in place—"[e]verything was good with the world." He and his wife left two sets of Encore keys on the dining room table.

¶ 7     When Hicks awoke at about 5 a.m. to get ready for work, his wife reminded him to remove his toolboxes from the Encore. He looked outside and said, "What car?" The Encore was missing. He realized then that he had been "robbed." He and his wife discovered other items missing from the house, including her purse, their car and work keys, their phones, and his grandson's tablets. In addition, Hicks noticed that one window screen was partially open, although it had been closed the night before.

¶ 8     Hicks called the police. He also called OnStar to report the stolen Encore. Later that morning, he was notified that the Encore was in a Walmart parking lot. He went there and identified the Encore.

¶ 9     Eric Lapier testified that he was a security guard at a Walmart store at Central Avenue and Riverside Boulevard on August 8, 2017. Around 7 a.m., a man he later identified as defendant

entered the store's foyer and sat on a motorized cart for 30 to 60 minutes. Defendant appeared tired and was wearing a White Sox hat. Lapier approached defendant and asked him to remove his feet from the top of the cart. As he did so, he noticed a black tablet in the basket of the cart. When police arrived, he showed them defendant's picture taken from a security camera. Lapier testified that defendant exited a blue SUV before entering the building.

¶ 10    Rockford police detective Nicholas Weber, a member of the crime scene unit, was dispatched to the Hicks residence on August 8, 2017. He found no fingerprints on the open window. He testified that there are many reasons for the lack of fingerprints, including that the person was wearing gloves. Weber did not process the window for DNA or process the house's interior for fingerprints or DNA.

¶ 11    While at the house, Weber learned from other officers that "whoever broke into the house, they took keys and stole a vehicle," which police found at a "nearby business." Weber then went to the Walmart to process the Encore. He (1) collected from inside the Encore a pair of gloves, a White Sox shirt, and three cigarette butts; (2) collected a DNA sample from the interior of the gloves; (3) took DNA samples from the steering wheel and shift lever of the Encore; and (4) checked the interior of the Encore for fingerprints—there were none.

¶ 12    Forensic scientist Laurie Lee testified that she found DNA from at least four individuals on the gloves recovered from the Encore. Defendant was the most significant contributor. Lee could not say when any of the DNA was deposited on the gloves. In addition, she found female DNA on one of three recovered cigarette butts. Lee received no samples from the White Sox shirt or the Encore.

¶ 13    The jury found defendant guilty of residential burglary. On the date initially set for sentencing, defendant presented a *pro se* posttrial motion alleging that defense counsel was

ineffective. The court conducted an inquiry under *People v. Krankel*, 102 Ill. 2d 181 (1984), and defendant presented his allegations. One of his claims was that counsel failed to call Latia Jones, who would have testified that she saw defendant being picked up in the stolen car. There were two others in the car when defendant got in. When they left, defendant was not driving. The court inquired of defense counsel, and he explained that an investigator from his office contacted Jones, but she was unable to provide defendant "an alibi defense for the date in question." Neither Jones nor anyone else had mentioned the presence of other people in the car. The court found that counsel was not ineffective and postponed the sentencing hearing.

¶ 14    Defendant, by counsel, filed a posttrial motion. The court denied the motion and sentenced defendant to seven years' imprisonment. Defendant timely appeals.

¶ 15                                    II. ANALYSIS

¶ 16    The State charged defendant with residential burglary, which required the State to prove that he (1) knowingly and without authority entered a dwelling and (2) did so with the intent to commit a theft or felony therein. *People v. Acklin*, 2020 IL App (4th) 180588, ¶ 17. Defendant contends that the State failed to prove beyond a reasonable doubt that he entered the victim's home. He points out that no one saw him inside or near the house, no physical evidence linked him to the house's interior, and the only property seen in his possession was the victim's car, which had been parked on the street outside the victim's home.

¶ 17    When a defendant challenges on appeal the sufficiency of the evidence to support a criminal conviction, we ask only " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

¶ 18    We agree with defendant that the State presented no evidence that he entered Hicks' house. No one saw him inside or near the house. Weber did not find any fingerprints on the open window or test it for DNA. He did not test the inside of the house for DNA or fingerprints. Moreover, the State presented no evidence that defendant possessed any of the property taken from inside the house. Surveillance video showed him arriving at Walmart in Hicks' car, but the car had been parked outside Hicks' home. The tablet Lapier saw on the scooter in Walmart was black, while Hicks described the devices taken from his house as green.

¶ 19    The State argues that the following circumstantial evidence proves that defendant entered the house: (1) defendant possessed Hicks' stolen car; (2) the car keys were missing from Hicks' dining room table; (3) a pair of gloves bearing defendant's DNA was found in the car; and (4) Weber testified that one possible reason no fingerprints were found on the window was that the intruder wore gloves. The State asks us to infer that defendant, while wearing the gloves, broke into the house, took the car keys and the other property reported missing, and used the keys to drive the car to Walmart.

¶ 20    Circumstantial evidence is the proof of facts from which the trier of fact may infer other connected facts that usually and reasonably follow from human experience. *In re Gregory G.*, 396 Ill. App. 3d 923, 929 (2009). The only limitation on the use of circumstantial evidence is that the inferences drawn from it must be reasonable. *Id.* The State need not prove beyond a reasonable doubt each link in the chain of circumstances. *Id.* It is enough if all the circumstantial evidence taken together satisfies the trier of fact beyond a reasonable doubt of the defendant's guilt. *Id.*

¶ 21    The State's circumstantial evidence did not prove beyond a reasonable doubt that defendant entered Hicks' house. Weber testified that an intruder using gloves was only *one* possible reason for not finding fingerprints on the window. Further, no evidence linked the gloves in the car to the

crime scene. Lee, the forensic examiner, testified that she found DNA on the gloves from at least three individuals in addition to defendant. She was unable to say when any of the DNA was deposited. A cigarette butt found in the car contained female DNA, suggesting that someone else was recently inside the car.

¶ 22    Moreover, although the car keys were missing from inside the house, there was no evidence that they were recovered from the car or defendant's person or that defendant ever had the keys. Defendant was seen in Hicks' car more than two hours after Hicks discovered the car missing and nearly three miles from Hicks' home. Many explanations could account for defendant having the car at Walmart other than his entering the victim's house and taking the keys. See *People v. Caban*, 251 Ill. App. 3d 1030, 1033 (1993). *Caban* noted that when a defendant has unexplained possession of proceeds from a recent burglary, this can infer that the defendant participated in the burglary or received the property later. *Id.* While both inferences are plausible, the likelihood of the former increases with the burglary's proximity in time and place to the defendant's being discovered with the stolen items. *Id.*

¶ 23    Both parties discuss the application here of *People v. Housby*, 84 Ill. 2d 415 (1981). *Housby* addressed jury instructions permitting the fact finder to draw inferences in certain situations. The court concluded that a permissive inference in a jury instruction, where the fact finder has the option of ignoring or relying upon the inference, requires "as a minimum that there be a 'rational connection' between the facts proved and the facts presumed." *Id.* at 420 (quoting *Tot v. United States*, 319 U.S. 463, 467 (1943)). *Housby* went on to overrule previous Illinois decisions holding "that exclusive and unexplained possession of recently stolen property is sufficient, standing alone and without corroborating evidence of guilt, for conviction of burglary." *Id.* at 423. It held that such an inference, even where permissive, violates the due process rights of defendants. *Id.*

However, the inference from "exclusive and unexplained possession of recently stolen property" may be drawn "in conjunction with other circumstantial evidence of guilt provided it is a permissive presumption which leaves the fact finder free *** to accept or reject the inference." *Id.* at 424. Thus, a defendant's due process rights will not be infringed by the factfinder's reliance on the inference if:

> "(i) there was a rational connection between his recent possession of property stolen in the burglary and his participation in the burglary; (ii) his guilt of burglary is more likely than not to flow from his recent, unexplained and exclusive possession of the burglary proceeds; and (iii) there was evidence corroborating [the defendant's] guilt." *Id.* at 424.

¶ 24    Courts have applied the *Housby* test in deciding whether the evidence was sufficient to sustain a residential burglary conviction. In *People v. Natal*, 368 Ill. App. 3d 262 (2006), a witness testified that he came home to find that his home had been burglarized. He went outside and saw the defendant standing on the sidewalk outside of his property about 20 feet away from the building. The defendant was holding and looking into two pillowcases that had been removed from the witnesses' bed. *Id.* at 264. The pillowcases contained some additional property taken from the victim's home. *Id.* Evidence showed that fingerprints lifted from the victim's home did not belong to the defendant. The defendant, for his part, testified that he was walking nearby and found the items. The court reversed the defendant's conviction, finding that his possession of recently stolen items, standing alone, was not enough to prove him guilty of residential burglary. *Id.* at 271.

¶ 25    In *People v. Rankin*, 2015 IL App (1st) 133409, a witness testified that he was a passenger in a friend's car when the car passed the building in which he lived. The witness saw the defendant, whom he knew, on the side of the building carrying clothes. *Id.* ¶ 4. When the witness later returned home, he found that someone had forcibly opened his apartment door. He entered the apartment

to find that all of his clothes were missing, the kitchen had been " 'torn up,' " and pipes were missing from the ceiling. *Id.* ¶ 5. The court reversed the defendant's residential burglary conviction, finding it "mere speculation" that the clothes in question were the victim's or that the defendant had entered his apartment and stolen the clothes. *Id.* ¶¶ 18-19.

¶ 26 In *Natal* and *Rankin*, the defendants were seen right outside the burglarized premises with property known or suspected to have been taken in the burglaries, yet the evidence was held insufficient to prove that they had entered the premises and stolen the property. The evidence here is even weaker, as defendant was seen nearly three miles from the Hicks home—and more than two hours after the burglary—driving a car that, in any event, was never inside the home.

¶ 27 The State argues that this case is more akin to *People v. Gonzalez*, 292 Ill. App. 3d 280 (1997), *Caban*, *People v. Span*, 156 Ill. App. 3d 1046 (1987), and *People v. Mallette*, 131 Ill. App. 3d 67 (1985), but those cases are distinguishable.

¶ 28 In *Gonzalez*, a witness saw the defendant and another man walk out through a gate on the victim's property while carrying items. The witness followed the two for several blocks until they entered an apartment. The victim returned home and alerted the police, who entered the apartment and discovered items taken from the victim's house. *Gonzalez*, 292 Ill. App. 3d at 282-83. Here, no eyewitness saw the defendant near the victims' house, nor was he found in possession of anything from the house.

¶ 29 In *Caban*, the defendant was coincidentally stopped while a passenger in a car containing the stolen items. The car was about four miles from the crime scene, and the burglary had not been reported yet. The defendant gave false accounts of his possession of the property. *Caban*, 251 Ill. App. 3d at 1031. This court found the evidence sufficient to sustain defendant's residential burglary conviction, noting that the defendant was stopped by the police while riding in a car

containing the stolen property and that the defendant's possession of the property was proximate in both time and location to the site of the burglary. *Id.* at 1033-34. Thus, it was not unreasonable for the trial court to have inferred that the defendant and his companion committed the burglary and were leaving the scene when the police serendipitously stopped them. *Id.*

¶ 30 In *Span,* the victim testified that she was awakened either by the sound of car doors slamming or the sound of her Cadillac diesel automobile starting up. She went to the front porch in time to see her car backing out of the driveway, and she noticed that there was someone in the passenger's seat. After calling the police, she noticed that her purse, which contained six $20 bills, credit cards, and her car keys was missing. She also noticed that someone had cut the screen and opened her kitchen window. *Span*, 156 Ill. App. 3d at 1048-49. About 40 minutes after the victim called the police an Illinois state trooper spotted the stolen Cadillac, and, after a high-speed chase and a foot chase, the driver and the passenger were arrested. The driver possessed property taken in the burglary. Although the passenger—the defendant—had no stolen property on his person, he had a sharp object capable of cutting the screen. The next day, the victim's purse was found outside her neighbor's house. *Id.* We affirmed the defendant's residential burglary conviction. We noted that, shortly after the burglary, the defendant was found in joint possession of the Cadillac and property taken from the victim's purse. We determined that the defendant's possession of a sharp object capable of cutting the window screen provided sufficient corroboration to support the conviction. *Id.* at 1051-52.

¶ 31 Finally, in *Mallette*, the police received at 3 a.m. a burglar alarm at an office complex in Bannockburn. Forty minutes later, Chicago police stopped a car in which the defendant was a passenger. The car contained typewriters, computer equipment, and a photocopy machine. While the police spoke with the driver, the defendant slid into the driver's seat and drove away. After he

was apprehended, police discovered that the serial numbers of the equipment found in the car matched those stolen in the Bannockburn burglary. *Mallette*, 131 Ill. App. 3d at 68-69. We affirmed the defendant's residential burglary conviction, noting that he was found 40 minutes later in a car containing proceeds of the burglaries. Although he was a passenger in the car, he was considered to be in joint possession of the property. Finally, there was corroborating evidence in that his flight showed consciousness of guilt. *Id.* at 72.

¶ 32    In each case the State cites, the defendant possessed property taken from inside the burglarized premises. Here, defendant acknowledges possessing Hicks' car, but Hicks testified that his car was parked outside. This distinction from the State's cases is not insignificant. *Housby* requires, at a minimum, that the defendant possess property taken from the interior of the premises; however, such possession cannot stand alone to support a rational inference that a defendant entered the premises and stole property. See *Housby*, 84 Ill. 2d at 423. Here, no one saw defendant with any of the items taken from inside the home, and there was no evidence that any such items were found in the car after defendant abandoned it.

¶ 33    Moreover, in each case cited by the State, there was significant corroborating evidence. In *Gonzalez*, an eyewitness saw defendant leaving the victim's property and followed him. In *Span*, the victim saw her car leaving the driveway and noticed someone in the passenger's seat, in which place the defendant was found just a short time later. The defendant also possessed a cutting tool. In *Caban* and *Mallette*, the defendants demonstrated their consciousness of guilt. Here, the only arguably corroborating evidence to which the State can point is defendant's possession of gloves, but any inference drawn is tenuous at best. Weber only speculated that the person who broke out the screen *might* have worn gloves. The gloves contained the DNA of at least three other people and no evidence connected the gloves to the burglary scene.

¶ 34                                    III. CONCLUSION

¶ 35    The State presented insufficient evidence to prove, even circumstantially, that defendant entered the Hicks house. He was found not to possess any property taken from inside the house, including the car keys.  Any number of explanations could account for his possession of the car at Walmart. Accordingly, we reverse defendant's conviction of residential burglary.

¶ 36    Reversed.