THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
PHILLIP DAVIS, Defendant-Appellant.

First District (3rd Division) No. 79-844

Opinion filed June 30, 1981.—Rehearing denied August 13, 1981.

James J. Doherty, Public Defender, of Chicago (Robert Gutch and Donald S. Honchell, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr and Richard F. Burke, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE RIZZI delivered the opinion of the court:

In a jury trial, defendant, Phillip Davis, was found guilty of murder and robbery and was given an extended sentence of 70 years. On appeal defendant contends that (1) the trial court erred in not suppressing certain evidence and his pretrial statements which were the product of an illegal arrest; (2) the trial court erred in sentencing him to an extended term of 70 years; (3) he was denied effective assistance of counsel; and (4) the prosecutor's closing argument was prejudicial. We affirm.

At approximately 7:20 a.m. on March 19, 1978, the bell captain at the McCormick Inn in Chicago, Illinois, sent defendant to deliver a continental breakfast to Room 1604, the victim's room. Between 7 and 7:30 on that morning, a maid went to the victim's room and saw her eating breakfast. At approximately 7:55 a.m., the bell captain sent defendant to the victim's room again to deliver another cup of coffee. The next time that the bell captain saw defendant in the service area was after 9 a.m.

At approximately 11 a.m., the maid returned to the victim's room and noticed the victim's feet by the door to the washroom. The maid reported her observation to her supervisor.

Several police officers arrived at the McCormick Inn and went to Room 1604. The victim's body was lying on the floor of the washroom. An electrical cord from a hair dryer was wrapped tightly around her neck. There were deep ligature marks on her neck as well as bruises on her face, neck and shoulders. There was dried blood on her face which apparently came from her nose. The victim's housedress was ripped from her shoulders to her waist, and her eyeglasses were on the floor in the entryway.

The officers found no signs of forced entry into the room. A tray, two coffee cups and a coffee decanter were on one bed, and a wallet was on the second bed. No money was found in the wallet or anywhere in the room. One of the police officers asked the security guard to find out who had made the room-service deliveries to the victim's room. After being informed that defendant made the deliveries, the officer spoke to defendant. Defendant said that at approximately 7:15 a.m., he was assigned to deliver a continental breakfast to Room 1604. After returning from the delivery, he was told that he had forgotten to bring a second cup of coffee. He returned to the victim's room with the coffee, and the victim was alive at the time. After this conversation, defendant was taken to the police station.

At the police station, after receiving *Miranda* warnings, defendant indicated that he wished to make a statement. According to defendant, he was given two room-service orders at approximately 7:15 a.m. While walking from the first delivery to the second delivery, he met the

houseman, Jose Patino. Patino said that they should rob the woman in Room 1604 because she had a lot of money. Defendant did not answer when Patino asked him if he wanted to rob the woman. Defendant made the delivery to 1604 and returned to the service area. After being instructed to return to 1604 with more coffee, defendant again met Patino. At this time, defendant agreed to rob the woman in 1604. While entering the room, defendant left the door partly open so that Patino could enter. Defendant gave the coffee to the victim and asked if she needed anything for a meeting she was having later in the adjoining room. Defendant followed the victim into the adjoining room and asked if he could use the washroom. When defendant was coming out of the washroom, Patino was coming into the room. Patino grabbed the victim around the neck and knocked her to the ground. Defendant held her hands while Patino choked her. Patino then wound the cord of a hair dryer around her neck. Blood was coming from the victim's nose, and she stopped breathing. Defendant took a watch off the victim's wrist, and Patino dragged the victim into the washroom. Patino took $180 from the victim's purse, and they left the room. Defendant and Patino were each wearing a glove, and they threw the gloves on the top of the ice machine on the 16th floor. Defendant went to the 11th floor and hid the watch in a fire extinguisher case. Patino kept the money.

After defendant gave the above statement, he returned to the McCormick Inn to show police officers the watch and gloves. Later, when defendant returned to the police station, he told a police officer that he gave the money taken from the victim to his uncle, who also worked at the McCormick Inn. Another police officer spoke to defendant's uncle, who gave the officer $165 which he took from a can in his garage.

Later in the evening, defendant gave a statement to an Assistant State's Attorney which was basically the same as the statement given to the police officer earlier. In the second statement, he indicated that he agreed to rob the woman the first time he met Patino. Defendant also told the Assistant State's Attorney that he communicated with Patino in English. The Assistant State's Attorney was unable to converse with Patino in English.

Patino testified through an interpreter that he does not speak English, and that he did not murder a woman at the McCormick Inn.

Defendant contends that his arrest was illegal because it was not based on probable cause, and that the trial court erred in not suppressing statements, a watch and a pair of gloves which were the product of an illegal arrest.

The trial court's finding as to probable cause will not be disturbed unless it is manifestly erroneous. (*People v. Clay* (1973), 55 Ill. 2d 501, 505, 304 N.E.2d 280, 282; *People v. Sakalas* (1980), 85 Ill. App. 3d 59, 63, 405

N.E.2d 1121, 1125.) Here, the trial court's finding is not manifestly erroneous. When the officer arrived at the victim's room, he observed no signs of forced entry. He then discovered that defendant, who had access to the victim's room through his position as an employee of the McCormick Inn, had made two deliveries to the victim prior to her death. The officer determined that defendant was the last person to have contact with the victim when she was alive.

■■ Under the circumstances, we conclude that the arrest was proper. A police officer may arrest a person without a warrant when he has reasonable grounds to believe that person is committing or has committed an offense. (Ill. Rev. Stat. 1977, ch. 38, par. 107—2(c); *People v. Walls* (1980), 87 Ill. App. 3d 256, 262, 408 N.E.2d 1056, 1062.) Reasonable grounds and probable cause are synonymous for purposes of arrest. (*People v. Wright* (1974), 56 Ill. 2d 523, 528, 309 N.E.2d 537, 540; *Walls*, 87 Ill. App. 3d 256, 262-63, 408 N.E.2d 1056, 1062.) Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a man of reasonable caution in believing that an offense has been committed and that the person arrested has committed the offense. (*People v. Creach* (1980), 79 Ill. 2d 96, 101, 402 N.E.2d 228, 230; *People v. Robinson* (1976), 62 Ill. 2d 273, 276, 342 N.E.2d 356, 358.) Probable cause does not require evidence sufficient to support a conviction. (*People v. Jodie* (1979), 79 Ill. App. 3d 348, 356, 398 N.E.2d 595, 602; *People v. Dickerson* (1979), 69 Ill. App. 3d 825, 829, 387 N.E.2d 806, 809.) The determination of whether probable cause exists depends on the totality of facts and circumstances known to the officer when the arrest is made. (*Clay*, 55 Ill. 2d 501, 504, 304 N.E.2d 280, 282; *Sakalas*, 85 Ill. App. 3d 59, 63, 405 N.E.2d 1121, 1125.) Here, the totality of facts and circumstances known to the officer when the arrest was made warrants the conclusion that the officer had reasonable grounds to believe that a murder had been committed and that the offense was committed by defendant. It follows that defendant's arrest was not illegal, and defendant's statements and the evidence obtained were not the product of an illegal arrest.

Defendant next contends that the trial court erred in sentencing him to an extended term of 70 years. The trial court may sentence an offender to a term of imprisonment in excess of the maximum sentence if one of the two factors in aggravation set forth in section 5—5—3.2(b) of the Unified Code of Corrections is present. (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—8—2; see *People v. Peddicord* (1980), 85 Ill. App. 3d 414, 417, 420, 407 N.E.2d 89, 91, 93; *People v. Butler* (1979), 78 Ill. App. 3d 809, 817-18, 396 N.E.2d 1374, 1380.) One of the factors is as follows:

> "When a defendant is convicted of any felony and the court finds
> that the offense was accompanied by exceptionally brutal or

heinous behavior indicative of wanton cruelty." Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—5—3.2(b)(2).

■■ In the present case, the trial court found that the offense committed by defendant was accompanied by exceptionally brutal and heinous behavior indicative of wanton cruelty. The facts support that conclusion. The victim was a guest of the hotel. Defendant gained access to her room through his position as a hotel employee. The victim was grabbed and knocked to the ground, and her clothing was ripped. She was choked to death after an electrical cord from a hair dryer was tightly wrapped around her neck. In a statement, defendant said that he watched her gasping for breath and saw blood coming from her nose before she stopped breathing. The autopsy revealed marks of violence characterized by contusions and abrasions. It also revealed pattern contusions produced by an instrument which leaves an imprint or impression on the skin. There were bruises on the victim's lower neck or upper chest area which, according to the pathologist, could have been caused by knuckles or a fist. Under the circumstances, we cannot say that the trial court erred in finding that the offense was accompanied by exceptionally brutal and heinous behavior indicative of wanton cruelty. Thus, an extended term sentence was not inappropriate.

■■ In regard to his sentence, defendant also contends that even if an extended term sentence was appropriate, the 70-year sentence was nevertheless excessive. In support of his contention, defendant argues that the court erred when it concluded that none of the factors in mitigation were present and that all of the factors in aggravation were present. (See Ill. Rev. Stat., 1978 Supp., ch. 38, pars. 1005—5—3.1, 1005—5—3.2.) However, defendant's summary of the trial court's conclusions is not supported by the record. At the sentencing hearing, the trial court stated that *almost* all of the mitigating factors were absent and *almost* all of the aggravating factors were present. Moreover, a sentence will not be altered on review unless there is a showing that the trial court abused its discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882, 884; *People v. Novak* (1981), 94 Ill. App. 3d 1024, 1031, 419 N.E.2d 393, 399.) We conclude that the trial court did not abuse its discretion.

Next, defendant argues that he was denied effective assistance of counsel. In this regard, defendant first argues that his attorney was incompetent because he failed to object to evidence regarding an alleged rape of the victim by defendant. At trial, evidence was introduced to show the presence of sperm in the victim's vagina and on defendant's uniform jacket and T-shirt. The record reveals that defendant's attorney did in fact vigorously object to the introduction of this evidence. Furthermore, the evidence was properly admitted as it was so related to the circumstances of the offenses for which defendant was being tried

that it tended to prove guilt of those charges. See *People v. Tranowski* (1960), 20 Ill. 2d 11, 16, 169 N.E.2d 347, 349; *People v. Sutton* (1976), 43 Ill. App. 3d 1008, 1010-11, 357 N.E.2d 1209, 1211.

Defendant also states that his attorney failed to challenge an alleged "hearsay conversation" between defendant and a "star witness." Defendant neither identifies this "star witness" nor locates in the record the conversation to which he is referring. Thus, defendant has failed to establish any incompetence as to this purported issue.

Defendant also complains that his attorney failed to move for a mistrial when there was reference to an alleged rape charge and an alleged confession by defendant. However, at no time was there any reference to defendant being charged with rape. As for the alleged confession, defendant's attorney filed a motion to suppress defendant's statements, which was properly denied by the trial court.

Finally, defendant argues that he was denied effective assistance of counsel because his attorney failed to call an alleged alibi witness. However, defendant does not disclose the identity of this witness, and there is nothing to indicate how this unknown witness could have established an alibi defense.

■■ We have examined each point defendant has raised to support his claim that he was denied effective assistance of counsel, and we conclude that each point is without merit.

■■ Defendant also contends that the prosecutor's closing argument was prejudicial. Defendant states that the closing argument was not supported by the evidence and specifically points to comments regarding what he refers to as the "alleged rape of the victim." The prosecutor's remarks were based on the evidence and reasonable inferences from the evidence. We therefore conclude that defendant's contention is without merit. See *People v. Attaway* (1976), 41 Ill. App. 3d 837, 856, 354 N.E.2d 448, 463-64.

Accordingly, the judgment of the trial court is affirmed.

Affirmed.

McNAMARA and McGILLICUDDY, JJ., concur.