THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FRED MOORE, Defendant-Appellant.

First District (5th Division)   No. 86—1875

Opinion filed June 30, 1988.

William C. Starke, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Kenneth T. McCurry,

Kim A. Novi, and Jerry D. Bischoff, Assistant State's Attorneys, of counsel), for the People.

JUSTICE SULLIVAN delivered the opinion of the court:

Following a jury trial defendant, Fred Moore, was found guilty of two counts of theft and was sentenced to serve a term of five years in the Department of Corrections. On appeal he contends that the trial court erred in denying his motion to quash his arrest, that he was prejudiced by the prosecutors' closing and rebuttal arguments and that the State failed to prove ownership of the property allegedly stolen.

At the hearing on defendant's motion to quash, Chicago police officer Emil Kos testified that at 6:45 p.m. on Sunday, October 14, 1984, he was on routine patrol with his partner, Officer Robert Smith, when he saw a group of six to eight men transferring boxes of merchandise from a green U-Haul van, which was parked in a vacant lot at 6356 South Maryland, to a white pickup truck parked a few feet away. Defendant was standing next to the truck. The doors to both vehicles were open and Kos saw 12 to 15 boxes moved from the van to the truck.

Kos and Smith parked their squad car behind the truck, which had no license plates or any markings, and exited their vehicle. As the officers approached, defendant closed the side door to the truck and the other men walked away from the scene. Kos asked defendant why he was moving goods from a rented U-Haul van to an unmarked truck in a residential neighborhood. Defendant explained that he had been making a delivery and that the truck he had been driving broke down on the Dan Ryan expressway at 95th Street, which is approximately five miles from 6356 South Maryland. He had been transferring the merchandise from the disabled truck to the white pickup truck for safekeeping until he could complete his delivery the next morning. Defendant stated that he had just recently purchased the pickup truck but he failed to explain the presence of the van.

When asked to produce an invoice to establish ownership of the goods, defendant fumbled through his wallet momentarily and then announced that he had left the invoice on the disabled truck. He added that the truck had been towed but stated that he did not know who towed the truck or where it had been taken. Defendant gave Kos permission to open the door to the pickup truck and said that the contents, which included boxes labeled as sump pumps, microwave ovens, high-powered polishers and air hammer sets, were to be delivered to his employer, Files Electric Company. Defendant offered to take the

officers to his company.

The police transported defendant in their squad car to Files Electric Company at 333 West 70th Street. Kos testified that although defendant was not under arrest, he was placed in handcuffs as a safety precaution because he had been acting combative and argumentative and there was no protective barrier between the front and back seats of the squad car. Kos stated that defendant appeared to be very nervous and that he gave evasive answers to his questions. Upon arriving at Files Electric, the handcuffs were removed and defendant produced a set of keys and unlocked the doors.

The building contained office space and a small storage area which was not large enough to accommodate the merchandise in the pickup truck. Kos observed that there were no goods stored on the premises or described in the company's catalogs that resembled the merchandise on the truck. The owner of the business could not be reached. While the police and defendant were at the offices of Files Electric, defendant removed some money from his pants pocket, put it in his shirt pocket and said, "Can we do something about this?" Kos and Smith detained defendant for further questioning.

Defendant was transported in handcuffs to the 3rd District police station, where he told theft investigators that he had purchased the merchandise at a bulk sale in Detroit, Michigan, and had received a "slip," not an invoice, to document the transaction. Defendant, however, could not produce any such document. Upon determining that the property was taken from the W. W. Granger Company without its permission, defendant was placed under arrest. The police did not have a warrant to arrest defendant or search his vehicles or place of employment.

At the hearing on his motion, defendant testified that on October 14, 1984, he resided in the third-floor rear apartment at 6354 South Maryland in Chicago. At about 6 p.m., he was coming home in a green U-Haul van he had rented. He parked the van in a vacant lot adjacent to his apartment building, exited the vehicle and walked to the back of the van to retrieve two six-packs of beer when the police approached him and asked him what he was doing. Defendant told them that he was getting some beer out of his van. The officers then asked him what was in the pickup truck. Defendant said that there was nothing unusual in the truck, and he refused to give them permission to inspect the truck, whereupon the police handcuffed him, placed him in the squad car and searched both vehicles.

After searching the vehicles the officers informed defendant that the merchandise in the pickup truck appeared to have been stolen.

When he protested that "no crime has been committed," they pointed out that there was no invoice for the goods. Defendant responded that he was not required to keep an invoice with him at all times. The police took defendant to Files Electric Company and ordered him to admit them to the premises, which they searched. The officers then returned defendant to the scene and directed him to drive his pickup truck to the local police station. Defendant was allowed to drive the vehicle by himself, although he was followed by a squad car.

Defendant testified that he considered himself to be under arrest from the time he was first handcuffed and placed in the squad car. He denied that he or anyone else had transferred any boxes of merchandise from the van to the truck on the evening of October 14, 1984. Two other witnesses, Willie Young, a longtime friend, and his nephew, Burnell Young, who resided in the second-floor rear apartment at 6354 South Maryland, corroborated portions of defendant's testimony on the motion to quash.

The court found that defendant was arrested when he was first placed in handcuffs and stated that the issue was whether the police had probable cause to arrest him at that time. Characterizing this question as "very close," the court found that Officer Kos was more credible than the defendant and his witnesses and held that under all of the circumstances the police had probable cause to arrest defendant. Accordingly, the motion to quash was denied.

Officer Kos' testimony at trial was substantially the same as his testimony on the motion to quash. The police recovered 30 cartons of Teel sump pumps, 7 cartons of Sharp microwave ovens, 24 cartons of Wilton vases, 15 cartons of Skil rotohammers, 14 cartons of Skil circular saws, 3 cartons of Dayton tap and dye sets, 8 cartons of Dayton alternator power plants, 43 cartons of Black & Decker hammer drills, 39 cartons of Milwaukee seven-inch power polishers, 41 cartons of Milwaukee one–half-inch magnum hammers and 10 cartons of Milwaukee belt sanders from defendant's pickup truck. They also found a rental agreement for the U-Haul van signed by defendant in which he named "M & M Resale," not Files Electric, as his employer, and gave an address other than 6354 South Maryland as his residence.

Defendant told Kos that he had picked up the merchandise in Detroit, Michigan, and was supposed to deliver it to the Files Electric Company warehouse at 333 West 70th Street. There was no warehouse at that address, however. In Officer Kos' presence, defendant told a theft investigator that he did not have an invoice for the merchandise because no invoices are given for bulk sales transactions. Defendant never produced a bill of sale, a receipt or any documenta-

tion to establish rightful ownership or possession of the goods.

Investigator David Kutz interviewed defendant shortly before midnight on October 14, 1984. Defendant told Kutz that he had purchased the property with a credit card in Detroit, Michigan, which is 300 miles from Chicago, between 2 p.m. and 3 p.m. that afternoon.[1] Defendant, however, could not produce either the credit card or the receipt for the goods. Kutz stated that the markings on the merchandise indicated that it belonged to the W. W. Granger Company. At the time of his arrest, defendant had $1,190 in cash in his possession.

John L. Demand, Jr., the security and safety manager for W. W. Granger Company, a nationwide distributor of industrial and commercial products, also testified. Demand inspected more than 200 cartons of merchandise recovered from defendant's pickup truck and determined, on the basis of special stock numbers printed on or affixed to the cartons, that the contents thereof belonged to the Granger Company. He identified photographs of the property which were introduced into evidence.

Demand stated that the serial numbers on the seven cartons containing the Sharp microwave ovens had been stamped on the cartons at Granger's distribution center in Niles, Illinois. Upon checking those numbers, Demand determined that the ovens had been shipped to the center on October 11, 1984. A receiving audit indicated that the ovens were being held in the reserve stock of the distribution center as of Friday, October 12, 1984. None of Granger's branch offices had ordered seven microwave ovens and if any such order had been received, it would have been filled from the "picking line" of older inventory, not from the reserve stock. The distribution center and the branch offices are closed on weekends. Each microwave oven was worth in excess of $350.

Demand testified further that none of Granger's branch offices had sold in a bulk sale the specific goods found in defendant's truck and there were no records of any branch office having ordered any of the items in the quantities recovered. Although Files Electric Company was one of Granger's customers, it ordered only small quantities of electrical equipment. The president and owner, James Files, told Demand in late October or early November 1984 that he had not ordered any of the items that the police recovered. Nor did Files mention the purchase of a bulk lot of merchandise in Detroit, Michigan.

Demand estimated that the wholesale value of the property recov-

---

[1]The receipt for the U-Haul van indicated that defendant had rented the vehicle shortly after 1 p.m. on October 14, 1984.

ered from defendant's pickup truck was more than $50,000. Defendant was not employed by W. W. Granger and did not have permission to take the property found in his truck.

James Files, the president of Files Electric Company, an electrical contracting firm, testified for defendant. Files stated that defendant had worked for him on various occasions for more than 10 years prior to his arrest. Defendant picked up tools and supplies and took them from one jobsite to another. He also purchased supplies for him.

Files testified that on Sunday morning, October 14, 1984, he gave $12,500 in cash to defendant and asked him to drive to an auction in Detroit, Michigan, to bid on materials and equipment he had used in his business. He stated that he had given cash to defendant on other occasions for similar purposes. Files, however, had no business records to show where the $12,500 came from or that he ever gave the money to defendant. Defendant did not give him a receipt for the cash.

Files stated that sometime after defendant was released on bond following his arrest, he produced a "bill of sale" from the auction which identified "Jones Contractors, Ltd.," as the seller but gave no address. Files could not recall the address of the warehouse in Detroit where the auction allegedly took place. The bill of sale was signed not by an agent of the seller, but by defendant. Files never received either the merchandise defendant allegedly purchased for him, which was confiscated by the police and later turned over to W. W. Granger, or the cash he had given to defendant. Files admitted that he had not sued anyone to recover the $12,500, and that he had not claimed the loss on his corporate income tax return.

Files stated that his company is an electrical contractor and not a retail outlet. The merchandise acquired at the auction was to be used in his business and not held for resale. Files admitted, however, that he had no use for microwave ovens.

After defendant rested his case, the State called James Files and Investigator Kutz in rebuttal. Files stated that defendant was not an employee but an independent contractor. Files had no business records on defendant.

Kutz testified that he spoke with Files on October 17, 1984. Kutz told Files that defendant had been arrested and had stated that he was employed by Files Electric Company. Kutz also told Files that defendant had claimed that the property recovered from his truck belonged to Files Electric. Files denied any knowledge of the incident and never mentioned the $12,500 in cash or the Detroit auction.

OPINION

Defendant initially contends that the trial court erred in denying his motion to quash his arrest. We disagree.

■ As we have previously noted, the trial court found that defendant was arrested when he was first placed in handcuffs and held that the police had probable cause to arrest him at that time. A finding of probable cause may not be disturbed unless it is manifestly erroneous. (*People v. Davis* (1981), 98 Ill. App. 3d 461, 463, 424 N.E.2d 630.) Upon our review of the facts, we are unable to conclude that the court's finding of probable cause was erroneous.

On Sunday evening, October 14, 1984, Officer Kos saw a group of men transferring boxes of merchandise from a rented U-Haul van to an unmarked pickup truck without license plates in a residential neighborhood. As Kos and his partner approached, defendant, who was standing next to the pickup truck, closed the side door to the truck and the other men walked away.

Upon being questioned, defendant explained that he had been making a delivery and that the truck he had been driving broke down on the Dan Ryan expressway at 95th Street. That location, however, is five miles from where the officers found defendant and his two vehicles. Defendant said that he had been moving the merchandise from the disabled truck to the white pickup truck for safekeeping until he could complete his delivery the next morning, but he could not produce an invoice to establish rightful ownership or possession of the goods. The invoice had been left in the disabled truck, which defendant said had been towed. Defendant, however, did not know who towed the truck or where it had been taken.

Defendant allowed Kos to open the door to the pickup truck and Kos noted that the contents included boxes labeled as sump pumps, microwave ovens, high-powered polishers and air hammer sets. Defendant said that he had picked up the merchandise in Detroit, Michigan, and that he was going to deliver it to his employer, Files Electric Company, at 333 West 70th Street. Defendant appeared to be very nervous.

■ Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a person of reasonable caution in believing that an offense has been committed and that defendant has committed the offense. (*People v. Davis* (1981), 98 Ill. App. 3d 461, 464, 424 N.E.2d 630.) The determination of whether probable cause exists depends on the totality of facts and circumstances known to the officer when the arrest is made. 98 Ill. App. 3d at 464.

In our judgment, the totality of facts and circumstances known to Officer Kos when defendant was arrested warrants the conclusion that the officer had reasonable grounds to believe that a theft had been committed and that the offense had been committed by defendant. Those facts and circumstances include: the area where the boxes of merchandise were being transferred (residential); the time of day (evening) and the day of the week (Sunday); the vehicles involved (a rented U-Haul van and a pickup truck with no markings or license plates); defendant's furtive conduct (closing the side door to the pickup truck); the type and variety of merchandise found in the truck (sump pumps, microwave ovens, high-powered polishers and air hammers); defendant's failure to explain why he was using the U-Haul van; his nervousness and evasiveness; the implausible story about a truck breakdown that allegedly occurred five miles from where the police saw the men transferring the boxes of merchandise; defendant's inability to produce an invoice for the goods; and his professed ignorance regarding who had towed his truck and where it had been towed.

Facts similar to those present here have been held to constitute probable cause for an arrest. (See *People v. Struhart* (1981), 93 Ill. App. 3d 534, 417 N.E.2d 676.) The facts in *People v. Reynolds* (1983), 94 Ill. 2d 160, 445 N.E.2d 766, cited by defendant, are distinguishable from those present here. Accordingly, we find that the trial court did not err in denying defendant's motion to quash his arrest.

■ Defendant next contends that he was prejudiced by the prosecutors' closing and rebuttal arguments. Although defendant cites 21 instances of allegedly improper comment, we note that defense counsel failed to object to most of these comments at trial or specify them in his motion for a new trial. It is well established that alleged errors must be objected to at trial and noted in the post-trial motion in order to be preserved for review. (See *People v. Thomas* (1983), 116 Ill. App. 3d 216, 220-21, 452 N.E.2d 77 (and the cases cited therein).) Errors not properly preserved are waived. We turn to an examination of those errors that were preserved.

In closing argument, the prosecutor stated that defendant rented a truck when he could have used one of Files Electric Company's vehicles. When defense counsel objected, noting that defendant did not have access to any of the company vehicles, the prosecutor corrected himself and accurately restated Files' testimony. The balance of the argument on this matter was addressed to defendant's possible reasons for transferring the boxes of merchandise from the rental van to the unmarked, unlicensed pickup truck, which was a legitimate area

of comment.

In rebuttal, the other prosecutor stated that W. W. Granger had records showing that the seven Sharp microwave ovens had been delivered and were on the premises on October 12, 1984. An objection to this statement was overruled. Although defendant asserts that this comment misstated the evidence, we disagree.

John Demand, W. W. Granger's security manager, testified that he determined, on the basis of the serial numbers stamped on the cartons containing the microwave ovens, that the ovens had been shipped to the distribution center on October 11, 1984. A receiving audit indicated that the ovens were being held in the reserve stock as of Friday, October 12, 1984. Demand admitted on cross-examination that he had not personally seen the microwave ovens on the premises and the prosecutor never said otherwise. Demand's testimony, however, fully supported the prosecutor's statement that Granger's business records proved that the ovens had been delivered to the distribution center and were on the premises on October 12, 1984.

■ In rebuttal, the prosecutor claimed that James Files told John Demand that he did not purchase any merchandise in Detroit, Michigan. Defense counsel objected on the grounds that the prosecutor had misstated the evidence. The objection was overruled. Although Demand actually testified that Files never mentioned making a bulk purchase of tools and equipment in Detroit, we do not believe that defendant could have been prejudiced by the prosecutor's comment. Another witness, Investigator Kutz, testified that Files denied any knowledge of the property recovered from defendant's pickup truck. Moreover, in overruling the objection, the court instructed the jury to reject statements made in closing arguments that were not based on the evidence or were not reasonable inferences therefrom.

Also in rebuttal, the prosecutor argued that the bill of sale defendant introduced into evidence was "discovered *** almost two years later [i.e., after the theft occurred]." An objection to this comment was overruled.

The theft in this case was alleged to have taken place on or about October 14, 1984. The prosecutors did not learn of the existence of the "bill of sale" until May 13, 1986, during the direct examination of defendant's witness, James Files. Files stated that defendant gave the bill of sale to him sometime after he was released on bond. Files admitted that he never disclosed the existence of the document to the police or to anyone associated with W. W. Granger.

· ■ In the context of the entire trial, it would appear that the prosecutor was disparaging the evidentiary significance of defendant's

"bill of sale" because it had not been disclosed in pretrial discovery or shown to anyone other than Files and defense counsel. We do not believe that the prosecutor was suggesting that defense counsel fabricated the document.

At the beginning of his rebuttal argument, the prosecutor stated: "Ladies and gentlemen, Fred Moore is a thief. That has been proven beyond any doubt from the evidence you have heard." An objection to this comment was overruled, and properly so, in our opinion.

■ In *People v. Grover* (1983), 116 Ill. App. 3d 116, 124, 451 N.E.2d 587, the court stated that "[a]n argument based upon evidence in the case which characterizes the accused in terms of the charges or the evidence in the proceedings then pending against him is not error." In *Grover*, the court held that the prosecutor's description of the defendant as a "rapist" was not improper where the comment was based on the evidence. (Accord *People v. Fleming* (1980), 91 Ill. App. 3d 99, 109, 413 N.E.2d 1330; *People v. Ganter* (1977), 56 Ill. App. 3d 316, 326, 371 N.E.2d 1072.) In our judgment, the prosecutor's description of defendant as a "thief" was a legitimate comment on the evidence.

■ Defendant also complains of the prosecutor's comment in rebuttal that defense counsel had spread a lot of "horse manure" around the courtroom. This pungent remark appears to be a variation on the more familiar "smoke screen" argument which has often been held to be improper but has seldom been found to be prejudicial. (See *People v. Hunter* (1984), 124 Ill. App. 3d 516, 548, 464 N.E.2d 659; *People v. Robinson* (1980), 91 Ill. App. 3d 1138, 1146, 415 N.E.2d 585 (and the cases cited therein).) We believe that the comment was improper but do not believe that it could have prejudiced defendant.

We are foreclosed from reaching the merits of defendant's argument regarding the prosecutor's comments on the receipt defendant obtained for the U-Haul van he rented because defendant has not included the receipt in the record on appeal. Moreover, defendant has not identified any testimony in the record that supports his argument in this matter.

Finally, defendant contends that the State failed to prove ownership of the property allegedly stolen. We disagree.

John Demand, the security manager for the W. W. Granger Company, testified that at 2 a.m. on October 15, 1984, he went to the 3rd District police station to examine the property recovered from defendant's pickup truck. He inspected more than 200 cartons of merchandise and determined, on the basis of special stock numbers printed on or affixed to the cartons, that the contents thereof belonged to W. W.

Granger. At trial Demand also identified photographs of the merchandise taken at the police station, which he stated truly and accurately depicted the recovered property. Demand transported the goods to the company's distribution center in Niles, Illinois. The serial numbers on the seven cartons containing the Sharp microwave ovens had been stamped on the cartons at the distribution center. The ovens had been shipped to the center on October 11, 1984, and a receiving audit indicated that they were on the premises as of Friday, October 12, 1984. The distribution center is closed on weekends and none of Granger's branch offices had ordered a quantity of seven ovens. Defendant did not object to any of this testimony.

In our judgment, Demand's testimony proved beyond a reasonable doubt that the property recovered from defendant's pickup truck had been stolen from the W. W. Granger Company. See *People v. Smith* (1977), 51 Ill. App. 3d 87, 366 N.E.2d 426.

We find no merit in defendant's argument that the goods themselves should have been introduced into evidence, as there is no such legal requirement. (See *People v. Banks* (1974), 17 Ill. App. 3d 512, 515, 308 N.E.2d 247; *People v. Hasty* (1970), 127 Ill. App. 2d 330, 335, 262 N.E.2d 292.) Nor do we find any merit in the argument that the photographs were improperly admitted into evidence. This issue was not preserved in defendant's motion for a new trial. Moreover, we have reviewed the record and have determined that there was an adequate foundation for admission of the photographs. (See *People v. Smith* (1972), 5 Ill. App. 3d 648, 653-54, 283 N.E.2d 727.) Furthermore, any error in admitting the photographs must be deemed to be harmless because, entirely apart from the photographs, Demand's testimony established ownership of the goods.

In our opinion, defendant was proved guilty beyond a reasonable doubt of theft. Accordingly, we affirm the judgment of the circuit court of Cook County.

Judgment affirmed.

LORENZ, P.J., and MURRAY, J., concur.